SPEC-CAST, INC., Plaintiff-Appellant, v. FIRST NATIONAL BANK AND TRUST COMPANY OF ROCKFORD, Defendant-Appellee.

Second District   No. 2—87—0238

Opinion filed December 21, 1987.—Rehearing denied May 26, 1988.

Bernard P. Reese, Jr., and William E. Gottfred, both of Reese & Reese, of Rockford, for appellant.

Lewis B. Kaplan, of Connolly, Oliver, Close & Worden, of Rockford, for appellee.

JUSTICE DUNN delivered the opinion of the court:

Plaintiff, Spec-Cast, Inc., appeals from a decision of a Winnebago County trial court which found the defendant, First National Bank and Trust Company of Rockford, not liable for paying a check from plaintiff to Richard's Auto Sales which was missing the drawer's signature. Plaintiff argues in his appeal that section 3—401 of the Uniform Commercial Code (Ill. Rev. Stat. 1985, ch. 26, par. 3—401) displaces the common law and that the trial court's decision finding ratification of the bank's action was against the manifest weight of the evidence.

In February 1983, William Jackson, president of Spec-Cast, Inc., discussed with Richard Lundquist the possibility of Spec-Cast loaning $20,000 to Lundquist's auto sales business. On February 9, 1983, Jackson visited Lundquist's office and had in his possession an un-

signed check for $20,000 made to the order of Richard's Auto Sales, Inc. Just before leaving Lundquist's office, Jackson gave Lundquist the unsigned check.

The next day, Jackson received a demand note executed by Lundquist in favor of Jackson and Spec-Cast. This note would require Lundquist to pay Jackson $20,000 with interest, on demand. That same day, a $20,000 deposit was credited to Spec-Cast's checking account. On February 11, 1983, the unsigned check was paid by First National Bank and Trust of Rockford.

Early in March 1983, Jackson received a checking statement which reflected the bank's payment of the $20,000 check. He then asked his secretary to call the bank, and she was told the check had been paid and no action could be taken by the bank. On March 15, 1983, Jackson had a discussion with Richard Peterson, a senior vice-president of First National Bank, who also informed him that the bank could take no action concerning the check because it had already been paid.

During the next year, Jackson received one payment from Lundquist on the promissory note, and on March 28, 1984, he demanded the principal and interest in writing from Lundquist. Late in May 1984, Jackson's attorney contacted First National Bank and notified it that Jackson held it responsible for the $20,000. Lundquist subsequently filed a voluntary bankruptcy petition, and the plaintiff filed suit against the bank in October 1984.

Plaintiff's first contention is that a bank may not present common law defenses to a showing that an instrument was honored without all the necessary signatures. In support of this argument, plaintiff cites section 1—103 of the Uniform Commercial Code, which states:

> "Unless displaced by the particular provisions of this Act, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions." Ill. Rev. Stat. 1985, ch. 26, par. 1—103.

Section 3—401 of the Uniform Commercial Code provides that "[n]o person is liable on an instrument unless his signature appears thereon." (Ill. Rev. Stat. 1985, ch. 26, par. 3—401(1).) Plaintiff argues that this provision displaces the common law where a question arises concerning signatures on instruments. However, the plaintiff cites no case law in support of this proposition. In Illinois, common law defenses have been made available to banks which have paid a check on

less than the required number of signatures. See, *e.g., Kores Carbon Paper & Ribbons Manufacturing Co. v. Western Office Supply Co.* (1953), 349 Ill. App. 208, 212, 110 N.E.2d 461 (a bank is not liable to depositors who receive the benefit of their bargain); *Phillip v. First National Bank* (1938), 297 Ill. App. 498, 511-12, 18 N.E.2d 57 (a bank is not liable when a depositor ratifies the transaction).

■ In *Madison Park Bank v. Field* (1978), 64 Ill. App. 3d 838, 381 N.E.2d 1030, the court in *dictum* considered the availability of common law defenses to the bank. While those issues were not properly before the court because they were being raised for the first time on appeal (*Madison Park Bank*, 64 Ill. App. 3d 838, 841-42, 381 N.E.2d 1030), at no time did the court indicate that such defenses were not available to the bank. A recent case which implicitly recognizes the existence of common law defenses is *Nagle v. La Salle National Bank* (N.D. Ill. 1979), 472 F. Supp. 1185. In *Nagle* the bank raised issues of waiver, estoppel and contributory negligence in a motion for summary judgment. (*Nagle,* 472 F. Supp. at 1190.) The court found that there were disputed issues of fact which made the arguments improper for summary judgment, but did not indicate that the defenses were not available at trial. While there have been no explicit statements concerning article 3 of the Commercial Code and whether it displaces the common law, the import of the case law is that article 3 supplements the common law. Therefore, common law defenses are available to a bank that pays a check with fewer than the proper number of signatures.

■ Plaintiff also argues that the court's order finding that plaintiff had ratified the agreement and received the benefit of his bargain was against the manifest weight of the evidence. A reviewing court will not disturb a trial court's determination unless the finding is against the manifest weight of the evidence. (*Menicocci v. Archer National Bank* (1978), 67 Ill. App. 3d 388, 391, 385 N.E.2d 63.) A judgment will only be found against the manifest weight of the evidence if an opposite conclusion is clearly apparent. 67 Ill. App. 3d at 391.

■■ A bank is not liable to a depositor when the depositor has received the benefit of the bank's payment. (*Kores Carbon Paper & Ribbons Manufacturing Co. v. Western Office Supply Co.* (1953), 349 Ill. App. 208, 212, 110 N.E.2d 461.) In finding for the defendant, the trial court indicated that the plaintiff received the benefit of the payment when he received a promissory note for $20,000 from Lundquist and ratified the bank's payment when he accepted an interest payment on that note. We agree.

In return for the check, Jackson received a promissory note from

Lundquist. If the check had not been paid, Jackson would not have received the note. Therefore, he received the benefit of the bank's payment. Jackson's acceptance of Lundquist's obligation under the note could not be clearer. He accepted an interest payment under the note and also made a written demand under the note to Lundquist. Jackson may not have received the security he desired for the note, but his receipt and acceptance of a payment on the note constituted a ratification of the bank's payment of the $20,000 check. While it may be unfortunate that the bargain Jackson received was not profitable to him, he did receive a promissory note in exchange for the $20,000 paid to Lundquist, thus obtaining the benefit of the bank's payment of the $20,000 check.

Accordingly, for the foregoing reasons we affirm the decision of the trial court.

Affirmed.

WOODWARD and HOPF, JJ., concur.